## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

STEPHEN C. DOWNING, individually and )
as beneficiary of various trusts; )
WILLIAM E. DOWNING, deceased, by and )
through his trustee as beneficiary of various )
trusts, KURT J. DOWNING, Trustee; and )
JACQUELINE J. DOWNING, deceased, by )
and through her trustee as beneficiary of )
various trusts, KURT J. DOWNING, Trustee, )
)
         Plaintiffs, )
)
v. )     Case No. CIV-19-00652-JD
)
CALTON AND ASSOCIATES, INC., )
)
         Defendant. )

## <u>ORDER</u>

Before the Court are two motions regarding a discovery dispute. The first is a Motion to Clarify [Doc. No. 136] filed by Defendant Calton & Associates, Inc. ("Calton"). Calton seeks to clarify the order issued by the Court on August 24, 2023, regarding Plaintiffs' Motion to Compel Discovery Responses [Doc. No. 104]. Plaintiffs responded, agreeing that additional clarification of that order is appropriate. [Doc. No. 138 at 1]. The second motion at issue is Plaintiffs' Motion for Sanctions. [Doc. No. 137]. Plaintiffs argue that Calton has engaged in "bad faith discovery conduct," and they request that the Court "enter an order ordering Calton to produce [Chris Gammon] for a second deposition and directing Calton to pay the costs associated with his deposition" as a sanction. [*Id.* at 10]. Calton responded in opposition. [Doc. No. 140].

The Court clarifies that its August 24, 2023, order was limited to Request for Production Numbers 28 through 32 and 34. And for the reasons stated below, the Court grants Plaintiffs' Motion for Sanctions.

## I.    <u>BACKGROUND</u>

Plaintiffs—Stephen C. Downing; William E. Downing, deceased, by and through his Trustee, Kurt J. Downing; and Jacqueline J. Downing, deceased, by and through her Trustee, Kurt J. Downing—bring this action against Calton for alleged wrongdoing in connection with the management of various trusts of which Plaintiffs are beneficiaries. Plaintiffs allege that Richard Noel Fredette—a financial advisor and securities broker— advised Kevin Downing—acting as trustee of the trusts—to invest exclusively in unsuitable mortgage-backed security investments. At the time, Fredette was an agent of IMS Securities, Inc. Plaintiffs seek to hold Calton liable under a theory of successor liability because Calton acquired the majority of IMS Securities' assets, including the trusts' customer accounts, effectively constituting a consolidation, merger, or continuation of IMS Securities.

This discovery dispute arises out of Plaintiffs' Request for Production Numbers 28 through 32 and 34. These requests ask Calton to produce all documents and communications related to the "asset only" purchase agreement ("APA") by which Calton acquired IMS Securities' assets. Plaintiffs filed a motion to compel in which they stated that "Calton's counsel has represented that they have asked Calton to provide additional documents responsive" to these requests, "and Calton has advised that no additional responsive documents exist" beyond what it had already produced (*i.e.*, "the

APA itself, the check paying IMS Securities $1,000, and the notice provided to IMS

Securities' clients regarding Calton's purchase of IMS Securities' accounts"). [Doc. No.

104 at 14]. "After the filing of the Motion to Compel," Plaintiffs' reply in support of their

motion indicated, "Calton provided a supplemental production that included numerous

additional documents related to the APA," including several emails with the subject line

"Asset Purchase Agreement." [Doc. No. 117 at 4]. This "delay in production," which

Plaintiffs assert is the result of "Calton's bad faith failure to produce responsive

documents," is the basis for Plaintiffs' motion for sanctions against Calton. [Doc. No.

137 at 5].

　　　　The Court held a hearing on the motion to compel on August 24, 2023. [Doc. No.

127]. The Court denied the motion to compel, in relevant part, "based on Calton's

supplemental discovery and plaintiffs' statements in the reply, as well as the

representations made by counsel" at the hearing, as "Calton ha[d] indicated, in its

discovery responses to these requests, that it [would] produce responsive documents."

[Doc. No. 135 at 26:23–27:8]. The Court denied the motion without prejudice to

Plaintiffs re-urging the issue in a later motion for sanctions, and the Court reminded

counsel of their duties and obligations under Federal Rule of Civil Procedure 26(g). [*Id.*

at 27:4–24]. The Court then noted that "[t]he parties have agreed in this hearing to confer

on the scope of the search and to confer and agree to search terms to confirm that

defendant has produced all responsive documents as to these requests." [*Id.* at 27:25–

28:3]. The Court ordered the parties to "do just that, to confer and confirm search terms

and to confirm all responsive documents have been produced by Calton." [*Id.* at 28:4–7].

The parties' disagreement about the scope of this order led to Calton's Motion to Clarify.

*See* [Doc. No. 136 at 1–2].

## II.    <u>LEGAL STANDARDS</u>

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Under Rule 34, a party may serve on any other party a request for production within the scope of Rule 26(b) to produce and permit the requesting party to inspect, copy, test, or sample designated documents, electronically stored information, or tangible things in the responding party's possession, custody, or control. Fed. R. Civ. P. 34(a)(1).

Under Federal Rule of Civil Procedure 26(e)(1)(A), a party who has responded to a request for production

> must supplement or correct its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

"If a party fails to provide information" as required by Rule 26(e), Rule 37(c)(1) provides that "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "In addition to or instead of this sanction, the court,

on motion and after giving an opportunity to be heard may order payment of the reasonable expenses, including attorney's fees, caused by the failure," and it "may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." Fed. R. Civ. P. 37(c)(1)(A), (C). Courts have inherent power to impose sanctions, including attorney's fees, "when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (citation omitted). "In contrast, Rule 37(c)(1) requires only the absence of substantial justification—a less stringent standard characterized as not justified to a high degree, but justified to a degree that could satisfy a reasonable person." *Sun River Energy, Inc. v. Nelson*, 800 F.3d 1219, 1227 (10th Cir. 2015) (cleaned up).

Ultimately, the district court has broad discretion over the control of discovery, and the Tenth Circuit will not set aside discovery rulings absent an abuse of that discretion. *See Martinez v. Schock Transfer & Warehouse Co.*, 789 F.2d 848, 850 (10th Cir. 1986) (recognizing that "[c]ontrol of discovery is entrusted to the sound discretion of the trial courts" and discovery rulings "will not be disturbed absent abuse of discretion"); *Sun River Energy*, 800 F.3d at 1228 (reviewing the imposition of a Rule 37(b)(2) sanction for abuse of discretion). "A trial court abuses its discretion when it makes a clear error of judgment, exceeds the bounds of permissible choice, or when its decision is arbitrary, capricious or whimsical, or results in a manifestly unreasonable judgment." *United States v. Nickl*, 427 F.3d 1286, 1300 (10th Cir. 2005) (cleaned up).

III.  **ANALYSIS**

   **A.  Calton has satisfied the Court's August 24, 2023, order if it has produced
        all non-privileged documents that are relevant to Request for Production
        Numbers 28 through 32 and 34.**

   Both parties assert that they cannot reach an agreement regarding the scope of the

Court's August 24, 2023, order. *See* [Doc. No. 136 at 1–2; Doc. No. 138 at 1–2].

According to Calton's Motion to Clarify, the parties have twice conferred regarding the

scope of discovery. [Doc. No. 136 at 2–3]. Calton asserts that it has complied with the

Court's order by producing all documents responsive to the agreed-to search terms,

which were specific to Plaintiffs' Request for Production Numbers 28 through 32 and 34.

[*Id.* at 3]; *see also* [Doc. No. 130 ¶ 5(b)]. Plaintiffs interpret the Court's order to require

Calton to "produce all the documents that were identified using the search protocol,"

regardless of whether they related to the APA. [Doc. No. 138 at 3]. "The main reason

Plaintiffs agreed to using the search term approach was that Plaintiffs would not have to

rely on Calton's judgment regarding what is responsive and what is not," Plaintiffs assert,

especially given "Calton's past failures to provide good faith discovery responses." [*Id.* at

3–4].

   Given this disagreement, the parties request that the Court clarify its August 24,

2023, order. Specifically, Calton asks the Court to "[s]tate whether or not it believes

Calton has complied with the Court's August 24, 2023 Order in its entirety," and if

Calton has not complied, it asks the Court to identify "what additional steps" Calton must

take to comply fully. [Doc. No. 136 at 3]. Plaintiffs request "that the Court enter an Order

clarifying that Calton is required to produce all non-privileged documents identified through the agreed upon search protocol." [Doc. No. 138 at 4].

The Court clarifies that its August 24, 2023, order was limited to Request for Production Numbers 28 through 32 and 34. These requests for production were the issue before the Court at the hearing. Although Plaintiffs raised broader concerns about whether Calton had "taken their duty and responsibility related to document production and searching for documents seriously," [Doc. No. 135 at 20:10–13], such concerns were not the issue on which the Court was ruling. Rather, when the Court ordered the parties "to confer and confirm search terms and to confirm all responsive documents have been produced by Calton," [*id.* at 28:4–7], it did so after the Court made clear it was announcing its ruling "[r]egarding Request for Production Numbers 28 through 32 and 34," [*id.* at 26:23–25]. At the close of the hearing, the Court further clarified that its order was limited to these specific requests for production:

> You-all should confer and agree to search terms, and plaintiffs should feel certain that their basis for sanctions is a proper basis.
>
> As I noted, Calton indicated in those particular responses—again that's Request for Production Numbers 28 through 32 and 34—that it would produce responsive documents.
>
> So I have ordered the parties to do what they have agreed to do; confirm search terms and confirm that all responsive documents have been produced.

[*Id.* at 33:19–34:3]. Because the Court's order was limited to Request for Production Numbers 28 through 32 and 34, if Calton has produced all non-privileged documents that are responsive to these requests, it has satisfied the Court's August 24, 2023, order.

**B. Because the Court grants Plaintiffs' motion for sanctions, Plaintiffs may re-depose Chris Gammon at Calton's expense.**

The crux of Plaintiffs' argument for sanctions is that Calton—in bad faith—failed to produce responsive documents that it had in its possession and did not supplement its production until after Plaintiffs filed a motion to compel. Plaintiffs assert that this delayed production prejudiced them because they could not adequately depose Chris Gammon, the former CFO of IMS Securities, without the relevant documents. Therefore, Plaintiffs request the Court to order that they may re-depose Gammon "as a sanction for Calton's bad faith failure to produce documents," and they ask the Court to direct Calton "to pay the costs associated with his deposition as a sanction." [Doc. No. 137 at 5, 10].

Plaintiffs explain that when they deposed Gammon, they "questioned him about his role in negotiating the APA." [*Id.* at 4]. At the time of the deposition, Calton had only produced the one-page APA, the $1,000 check to IMS Securities, and presumably the notice sent to IMS Securities' clients; Calton had not yet supplemented its response with the additional documents and emails. [*Id.*]. Therefore, when Gammon "denied having any involvement in [] negotiating the APA," the Plaintiffs "had no documents that contradicted his testimony," so their counsel "was unable to challenge his statements." [*Id.*]. After the deposition, however, Calton's supplemental production demonstrated that Gammon was involved in negotiating the APA; according to Plaintiffs, the later-produced documents "were clearly responsive to Plaintiffs' previously issued discovery requests that sought documents related to the APA." [*Id.*]. Plaintiffs seek to re-depose Gammon because they "were unable to properly question Mr. Gammon[] about his role in

negotiating the APA during his deposition," and "Calton's bad faith failure to produce responsive documents prevented Plaintiffs[] from doing so." [*Id.* at 5]. Calton argues in response that a second deposition of Gammon is unnecessary and that attorney-client privilege will bar most of Plaintiffs' questions. [Doc. No. 140 at 3–6].

Under Federal Rule of Civil Procedure 26(e)(1)(A), a party has a duty to "supplement or correct its disclosure or response" to a request for production "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Importantly, though, "Rule 26 imposes a *duty* on [parties]; it grants them no *right* to produce information in a belated fashion." *Dag Enters., Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 110 (D.D.C. 2005) (citation omitted); *see generally Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 989 (10th Cir. 2019) (favorably citing *Dag Enterprises*). "Rule 26 provides no safe harbor for [a party's] lack of diligence and failure to show 'good cause.'" *Dag Enters.*, 226 F.R.D. at 110. Nor does it offer "a second bite at the apple" or "license to sandbag one's opponent." *Cohlmia v. Ardent Health Servs., LLC*, 254 F.R.D. 426, 433 (N.D. Okla. 2008) (citation omitted). Rather, "supplementation under the Rules means correcting inaccuracies, or filling the interstices of an incomplete report *based upon information that was not available* at the time of the initial disclosure." *Dag Enters.*, 226 F.R.D. at 109 (cleaned up).

Calton's supplemental production included various documents relating to the APA, including emails from 2017 bearing the subject line "Asset Purchase Agreement." *See* [Doc. Nos. 137-4, 137-5, and 137-6]. These emails are responsive to Request for Production Numbers 28 through 32 and 34. There is nothing to suggest that these emails,

which were sent approximately two years prior to the start of this action, were not available to Calton when it first responded to the requests for production. Calton has not demonstrated good cause for its late production or shown that it did not identify these documents despite the exercise of reasonable diligence. Further, the information in these emails—namely, that Gammon was involved in the negotiation of the APA—had not otherwise been made known to Plaintiffs during the course of discovery. Therefore, the Court finds that Calton failed to provide information as required by Rule 26(e).

Sanctions are appropriate under Federal Rule of Civil Procedure 37(c)(1) if a party fails to provide information as required by Rule 26(e) and that failure is not "substantially justified" or "harmless."[1] Calton essentially argues that its failure was harmless because Plaintiffs already had the opportunity to depose Gammon with respect to the APA. *See* [Doc. No. 140 at 4]. This argument is unavailing. Various courts have found that a party suffered prejudice when the other side's delayed production forced the party to proceed with a deposition without the benefit of necessary, relevant documents. *E.g.*, *Reilly v. Home Depot U.S.A., Inc.*, 670 F. Supp. 3d 126, 143–44 (D.N.J. 2023) (finding that the

---

[1] Although both parties generally reference Rule 37, Plaintiffs request that the Court exercise its "inherent authority to sanction bad-faith conduct in litigation." [Doc. No. 137 at 5]; *cf.* [Doc. No. 140 at 4–5] (Calton arguing it complied with Rule 37 in its responses). Sanctions are typically appropriate under the Court's inherent authority when there is a finding of bad faith. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991). "In contrast, Rule 37(c)(1) requires only the absence of substantial justification—a less stringent standard characterized as not justified to a high degree, but justified to a degree that could satisfy a reasonable person." *Sun River Energy, Inc. v. Nelson*, 800 F.3d 1219, 1227 (10th Cir. 2015) (cleaned up). Because the Court finds that sanctions are appropriate under Rule 37(c), it does not reach the issue of whether Calton acted in bad faith because the Court awards Plaintiffs the relief they seek: re-deposing Gammon and receiving the fees and costs associated with the additional deposition.

defendants "have been prejudiced by the delayed production in that depositions were conducted without the benefit of" relevant evidence); *Owen v. No Parking Today, Inc.*, 280 F.R.D. 106, 111 (S.D.N.Y. 2011) (concluding that, although the plaintiff eventually received the relevant documents, "he was still harmed by [the defendant's] failure to cooperate," in part because the plaintiff "was forced to proceed with [a] deposition before receiving necessary documents"). This case is no different. The Court finds that Calton's delayed production prejudiced Plaintiffs because they could not adequately question Gammon about his role in negotiating the APA without the documents in Calton's supplemental production. Given this prejudice to Plaintiffs and the fact that Calton has not provided good cause for its failure to produce these documents, Calton's failure was neither harmless nor substantially justified.

Federal Rule of Civil Procedure 37(c)(1)(C) gives the Court broad authority to impose "appropriate sanctions." The Tenth Circuit has confirmed that "[t]he protections and sanctions found in the discovery rules are not absolute and contemplate the use of judicial discretion." *Marshall v. Ford Motor Co.*, 446 F.2d 712, 713 (10th Cir. 1971). When a court imposes attorney's fees as a sanction, "such a sanction, when imposed pursuant to civil procedures, must be compensatory rather than punitive in nature." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017). "That means, pretty much by definition, that the court can shift only those attorney's fees incurred because of the misconduct at issue," so a "complaining party . . . may recover 'only the portion of his fees that he would not have paid but for' the misconduct." *Id.* at 108–09 (quoting *Fox v. Vice*, 563 U.S. 826, 836 (2011)). Thus, when considering the appropriate amount of

11

fees to award, "[t]he court's fundamental job is to determine whether a given legal fee—
say, for taking a deposition or drafting a motion—would or would not have been incurred
in the absence of the sanctioned conduct." *Id.* at 110.

　　As a sanction, Plaintiffs request to re-depose Gammon and for Calton to pay the
associated costs. These measures are reasonable, directly related to the sanctioned
conduct, and would put Plaintiffs in the same position they would have been absent
Calton's discovery failure. *See Owen*, 280 F.R.D. at 111. Thus, the Court will allow
Plaintiffs to re-depose Gammon. This deposition must be limited to the issues raised by
the supplemental productions; in other words, the scope of this deposition may not go
beyond Gammon's involvement with the APA.

　　Calton must pay all reasonable expenses, including attorney's fees, incurred in
conducting this additional deposition. The costs of taking this additional deposition
would not be incurred had Calton complied with its obligations under Rule 26(e). *See
Goodyear*, 581 U.S. at 108. To be clear: these costs are imposed on Calton & Associates,
Inc., not its counsel. Plaintiffs have repeatedly emphasized that they believe "Calton
failed to disclose the existence of responsive documents to their counsel," and they have
made clear that Plaintiffs "are not alleging that Calton's counsel made any
misrepresentations regarding the responsive documents." [Doc. No. 137 at 8 n.1]. In any
case, under the Tenth Circuit's binding interpretation of Rule 37(c)(1), "the rule does not
authorize sanctions against counsel." *Sun River Energy*, 800 F.3d at 1225.

　　In sum, the Court finds that Calton failed to provide information as required by
Rule 26(e), and that failure was not harmless or substantially justified. As a sanction

under Rule 37, Plaintiffs may re-depose Chris Gammon. Calton must pay all costs associated with that deposition. The Court expects the parties to promptly set the deposition and to avoid unnecessary motion practice, which may otherwise result in sanctions.

## IV.    **CONCLUSION**

For these reasons, the Court GRANTS Plaintiffs' motions for sanctions [Doc. No. 137] and clarifies that Calton has satisfied the Court's August 24, 2023, order if it has produced all non-privileged documents that are responsive to Plaintiffs' Request for Production Numbers 28 through 32 and 34. This order resolves all currently pending motions in this action.

The parties shall confer regarding dates for Gammon's deposition and shall file with the Court within 14 days of this order a joint status report advising the Court of the deposition date and proposed dates for any remaining deadlines in this action. Should the parties require a status conference in order for the Court to enter the remaining scheduling order, they should indicate their request in the joint status report, and the Court will promptly set them for a conference.

IT IS SO ORDERED this 8th day of November 2024.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE