**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

STEPHEN C. DOWNING, individually and as beneficiary of various trusts; WILLIAM E. DOWNING, deceased, by and through his trustee as beneficiary of various trusts, KURT J. DOWNING, Trustee; and JACQUELINE J. DOWNING, deceased, by and through her trustee as beneficiary of various trusts, KURT J. DOWNING, Trustee,

Plaintiffs,

v.

CALTON AND ASSOCIATES, INC.,

Defendant.

Case No. CIV-19-00652-JD

**ORDER**

Before the Court is Defendant Calton and Associates, Inc. ("Calton") Motion for Summary Judgment. [Doc. No. 150]. Plaintiffs Stephen C. Downing, William E. Downing, Kurt J. Downing, and Jacqueline J. Downing (collectively, "Plaintiffs") filed a Response. [Doc. No. 155]. For the reasons outlined below, the Court denies the Motion.

## I. BACKGROUND[1]

Plaintiffs are beneficiaries of the E.B. Downing Revocable Trust and the Bertha M. Downing Revocable Trust, both of which were created for the purpose of distributing assets to the children of E.B. and Bertha Downing. [Doc. No. 71 ¶ 9]. Plaintiffs are also

[1] Because the parties agree on few facts in this case, in addition to the undisputed material facts discussed below, the Court outlines background information from Plaintiffs' First Amended Complaint. [Doc. No. 71].

beneficiaries of the Downing Family Trust. [*Id.* ¶ 10]. The Court will refer to these trusts collectively herein as the Downing Trusts.

Kevin Downing, at all times relevant to this lawsuit, was the trustee of the Downing Trusts. [*Id.* ¶ 11]. In early 2015, Kevin Downing employed Richard Fredette as a financial advisor to help him invest the funds of the Downing Trusts. [*Id.*]. When Kevin Downing first employed Fredette, he worked for IMS Securities, Inc. ("IMS Securities") and later worked for Calton. [*Id.*].

Plaintiffs allege that Fredette advised Kevin Downing to invest in mortgage-backed securities, in the form of collateralized mortgage obligations ("CMOs"), which Plaintiffs claim were unsuitable for the income goals of the beneficiaries. [*Id.* ¶ 13]. Plaintiffs state that the mortgage-backed securities were unsuitable for the beneficiaries' income goals because they have maturation dates far into the future and are volatile. [*Id.*]. Plaintiffs also state that Calton and Fredette directed the investment accounts to engage in margin trading, which was inconsistent with the income goals of the beneficiaries. [*Id.* ¶ 14].

Plaintiffs assert the following causes of action against Calton related to the above investments:

(1) violation of Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5 [*id.* ¶¶ 16–20];

(2) control person liability in violation of Section 20(a) of the Securities Exchange Act, 15 U.S.C. § 78t(a) [*id.* ¶¶ 21–25];

(3) improper investment advice contrary to industry custom and practice [*id.* ¶¶ 26–31];

(4) breach of fiduciary duty [*id.* ¶¶ 32–36];

(5) fraud [*id.* ¶¶ 37–47]; and

(6) successor liability [*id.* ¶¶ 48–58].

Calton asserts the following affirmative defenses: ratification, waiver, res judicata, failure to join necessary parties, Fredette was not acting within the scope of his employment with Calton, Calton is not a successor to IMS Securities, and the injury was the result of the wrongful/criminal acts of Fredette. [Doc. No. 74 at 7–8].[2] Calton also claims that Stephen Downing, William Downing, and Jacqueline Downing are not entitled to the relief requested in the Amended Complaint. [*Id.* at 8].

Calton moves for summary judgment on all of Plaintiffs' claims, except for successor liability. [*See* Doc. No. 150 at 12–19]. Calton also moves for summary judgment on its affirmative defense that Calton is not a successor to IMS Securities, which Calton states bars liability on all of Plaintiffs' claims. [*Id.* at 19–22].

## II. UNDISPUTED MATERIAL FACTS

IMS Securities created investment accounts for the Downing Trusts. [Doc. No. 150 ¶ 6, Doc. No. 155 ¶ 5]. In November 2017, IMS Securities quit operating as a registered broker-dealer for retail clients. [Doc. No. 150 ¶ 7, Doc. No. 155 ¶ 6]. On November 8, 2017, IMS Securities entered into an Asset Purchase Agreement ("APA") with Calton, pursuant to which Calton purchased IMS Securities' retail customer accounts unless those customers transferred to another broker-dealer. [Doc. No. 150 ¶ 8,

[2] In this Order, the Court uses page numbering from the CM/ECF stamp at the top of the filing on the district court docket.

Doc. No. 155 ¶ 7]. The investment accounts for the Downing Trusts were transferred to Calton.[3]

## III. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is material if under the substantive law it is essential to the proper disposition of the claim." *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016) (internal quotation marks and citation omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). A dispute about a material fact is genuine if a rational trier of fact could find in favor of the nonmoving party on the evidence presented. *Fassbender v. Correct Care Sols., LLC*, 890 F.3d 875, 882 (10th Cir. 2018); *see also Anderson*, 477 U.S. at 248 (explaining a dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

In applying this standard, the Court "review[s] the facts and all reasonable inferences those facts support[ ] in the light most favorable to the nonmoving party." *Doe*

[3] The parties do not dispute that the investment accounts for the Downing Trusts were transferred to Calton, and the fact that the parties state this fact differently is not material to the Court's decision. [*See* Doc. No. 150 ¶ 14 (stating Kevin Downing made the decision to transfer the investment accounts to Calton); Doc. No. 155 ¶ 10 (stating that the positive consent letter states that all accounts will be transferred to Calton if the client did not object by a date certain); *id.* at 12, 16, 17 ¶¶ 3, 13, 16 (in the additional statements of material fact—which are not contested by Calton as it did not file a reply—recognizing the investments for the trusts were handled by IMS Securities and Calton)].

*v. Univ. of Denver*, 952 F.3d 1182, 1189 (10th Cir. 2020) (second alteration in original) (quoting *Evans v. Sandy City*, 944 F.3d 847, 852 (10th Cir. 2019)). "While we view the record in the light most favorable to the party opposing summary judgment, 'the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.'" *Phillips v. Calhoun*, 956 F.2d 949, 950 (10th Cir. 1992) (quoting *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990)).

"A defendant may use a motion for summary judgment to test an affirmative defense which entitles that party to a judgment as a matter of law." *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997). When a defendant moves for summary judgment upon an affirmative defense, he must show no genuine issue of material fact exists regarding that affirmative defense. *Id.* If the defendant meets this burden, the plaintiff then must show a genuine issue of material fact exists. *Id.* If the plaintiff fails to do so, the defendant is entitled to judgment as a matter of law pertaining to the affirmative defense. *Id.*

## IV. DISCUSSION

### A. Calton has not demonstrated it is entitled to summary judgment on Plaintiffs' claim under 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5.

Calton moves for summary judgment on Plaintiffs' claim that it violated 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5. [Doc. No. 150 at 12–13]. Section 78j(b) of the Securities Exchange Act prohibits "any manipulative or deceptive device or contrivance,

in contravention of such rules and regulations as the Commission may prescribe" in connection with the sale of securities. 15 U.S.C. § 78j(b). Implementing this restriction, Rule 10b-5 prohibits the use of "any device, scheme, or artifice to defraud," "any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading," or "any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person" in connection with the sale of securities. 17 C.F.R. § 240.10b-5.

A successful claim under these provisions requires the following six elements:

(1) a material misrepresentation or omission by the defendant;

(2) scienter;

(3) a connection between the misrepresentation or omission and the purchase or sale of a security;

(4) reliance upon the misrepresentation or omission;

(5) economic loss; and

(6) loss causation.

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.*, 552 U.S. 148, 157 (2008).

Calton contends that Plaintiffs cannot prove that Calton made a material misrepresentation or omission or that such a misrepresentation was made with scienter. [Doc. No. 150 at 12]. Calton claims that all decisions regarding the investment accounts were made prior to their transfer to Calton, and thus Calton could not have made misrepresentations/omissions and lacked the requisite intent. [*Id.* at 13].

Plaintiffs argue that Fredette violated Rule 10b-5 by recommending a security unsuitable for the Downing Trusts' stated objectives and that IMS Securities and Calton are vicariously liable for his actions. [Doc. No. 155 at 24–28]. The Tenth Circuit has held that Rule 10b-5 claims can encompass situations in which a defendant purchased securities that were unsuitable for the plaintiff's investment needs. *See O'Connor v. R.F. Lafferty & Co., Inc.*, 965 F.2d 893, 897 (10th Cir. 1992). Unsuitability claims can be analyzed as misrepresentation or omission cases or fraudulent practices cases. *Id.* Plaintiffs seem to be proceeding under the theory that Fredette made a misrepresentation or failed to disclose a material fact. [*See* Doc. No. 155 at 24–25]. The elements of such a claim are (1) the actor made an untrue statement of a material fact, or failed to state a material fact, (2) in so doing, that party acted knowingly with intent to deceive or defraud, and (3) the plaintiff relied on the misrepresentations or omissions and sustained damages as a proximate result. *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 986 (10th Cir. 1992).

Calton does not contest that Fredette's conduct amounts to an unsuitability claim under Rule 10b-5 but rather argues that Calton itself did not make a material representation or omission with scienter because "[a]ll decisions concerning the Investment Accounts were in force and confirmed by Kevin Downing while at IMS Securities prior to being transferred to Calton." [Doc. No. 150 at 13]. Plaintiffs, however, assert that IMS Securities and Calton are responsible for the actions of Fredette under theories of common law agency or *respondeat superior*. [Doc. No. 155 at 27–28 (citing *Kerbs v. Fall River Indus., Inc.*, 502 F.2d 731, 741 (10th Cir. 1974) (holding defendant

corporation liable for securities fraud because "its president, acting within the scope of his apparent authority as principal officer and agent of the corporation, engaged in conduct which violated provisions of § 10 of the Act and Rule 10b-5")]. Because Calton did not file a reply brief, it has not addressed these arguments. Thus, the Court cannot conclude that Calton has met its burden of demonstrating it is entitled to judgment as a matter of law.

Additionally, as demonstrated by the parties' arguments regarding this cause of action, fact issues exist that prevent summary judgment. For example, Plaintiffs present evidence that Fredette, not Kevin Downing, controlled the investment decisions for the Downing Trusts. [Doc. No. 155 at 25 (citing to additional material facts with evidence in support to which Calton did not reply)]. In support of this argument, Plaintiffs present summary judgment evidence that Kevin Downing did not have the education or background to understand the investments. [*Id.*]. Plaintiffs also present summary judgment evidence that Fredette informed Kevin Downing of investments after they were made, thus demonstrating that Fredette had control of the investment decisions for the Downing Trusts. [*See id.* at 25–26; Doc. No. 155-8, Fredette Email; Doc. No. 155-9, Ray Stagner Dep. at 102:24–104:24]. In contrast, Calton states that "Kevin Downing was in complete control of how the Investment Accounts were diversified." [Doc. No. 150 at 13]. Calton cites the trust documents in support of its position that Kevin Downing controlled investment decisions. [*See id.* (citing Doc. No. 150-1, Bertha M. Downing Revocable Trust; Doc. No. 150-2, E.B. Downing Revocable Trust)].

This conflicting summary judgment evidence illustrates that the issue is appropriate for the jury to resolve. *See Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 486 (10th Cir. 1995) ("At summary judgment, the inquiry is not whether the parties dispute certain facts, but instead whether the evidence establishes a *genuine* issue of *material* fact. A fact is 'material' only if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'") (emphasis in original) (quoting *Anderson*, 477 U.S. at 248). Whether Kevin Downing controlled the investment decisions at issue is material to Plaintiffs' ability to assert an unsuitability claim, and Plaintiffs have presented sufficient evidence for a reasonable jury to find that Kevin Downing was not qualified to make investment decisions and was, in fact, not making those decisions. Accordingly, summary judgment is inappropriate.

**B. Calton has not demonstrated it is entitled to summary judgment on Plaintiffs' control person liability claim.**

Calton next moves for summary judgment on Plaintiffs' control person liability claim under Section 20(a) of the Securities Exchange Act. [Doc. No. 150 at 13–15]. Section 20(a) provides as follows:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable . . . unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a). "[T]o state a prima facie case of control person liability, the plaintiff must establish (1) a primary violation of the securities laws and (2) 'control' over the

primary violator by the alleged controlling person. *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1305 (10th Cir. 1998). Control is defined as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person[.]" 17 C.F.R. § 230.405. If a plaintiff can establish this prima facie case of control person liability, the burden then shifts to the defendant to demonstrate it "acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t(a).

Here, in support of its prima facie case for control person liability, Plaintiffs assert a primary violation by Fredette, a registered agent of Calton, and control by Calton as the broker-dealer. [Doc. No. 155 at 29–30]. As with Plaintiffs' prior claim, a material factual dispute exists regarding who directed the investments relating to the Downing Trusts. Whereas Plaintiffs claim Fredette committed the primary violation, Calton insists Kevin Downing "made all investment decisions[.]" [Doc. No. 150 at 14]. Thus, at a minimum, fact issues are present regarding whether a primary violation of securities law exists.

Calton also argues that Plaintiffs have failed to make a prima facie case because they have not demonstrated Calton controlled the decisions relating to the investment accounts. [Doc. No. 150 at 14]. Calton argues that Kevin Downing had control over the investment accounts and that decisions regarding the investment of those accounts were made before their transfer to Calton. [*Id.*]. Although initial investment decisions regarding the Downing Trusts may have been made while at IMS Securities, Plaintiffs state that the Downing Trusts' investment in securities unsuitable for their investment needs was ongoing and continued while at Calton. [Doc. No. 155 ¶ 16 ("While the

majority of the trades effectuated on behalf of the Trusts were made while Fredette was registered with IMS, numerous trades were completed after Fredette had transferred to Calton, wherein CMO's were again purchased for the Trusts.") (citing Doc. No. 155-10, Calton Account Statements; Doc. No. 155-14, Commission Statements; Doc. No. 155-15, Dwayne Calton Dep. at 91:25–92:8)].[4] Additionally, the Court determines that Calton's arguments rely upon an incorrect interpretation of the requirements of a prima facie case of control person liability. Whether Calton had "control" over Fredette does not examine whether Calton actually controlled the investment decisions relating to the Downing Trusts but asks whether Calton had "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person[.]" 17 C.F.R. § 230.405. Plaintiffs allege that, as the broker-dealer, Calton had the ability to control Fredette during his time at Calton. [Doc. No. 155 at 29–30]. Calton does not present summary judgment evidence that Calton lacked the ability "to direct or cause the direction of the management and policies" of Fredette. 17 C.F.R. § 230.405. Accordingly, Calton has not met its burden of showing it is entitled to judgment as a matter of law.

Nor has Calton shown it is entitled to judgment as a matter of law because it "acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t(a). Calton states it "lacked culpable

[4] Like all of Plaintiffs' additional material facts, this is uncontroverted by Calton who did not reply. *Cf. SEC v. GenAudio Inc.*, 32 F.4th 902, 920 (10th Cir. 2022) (explaining that review of the district court's ruling on summary judgment is "from the perspective of the district court at the time it made its ruling, ordinarily limiting . . . review to the materials adequately brought to the attention of the district court by the parties" (citation omitted)).

participation and had no knowledge of Kevin Downing or Fredette's actions until this lawsuit arose." [Doc. No. 150 at 15]. As pointed out by Plaintiffs, the test for rebutting a prima facie case for control person liability is whether Calton "acted in good faith" rather than whether it "lacked culpable participation." [Doc. No. 155 at 30 ("a plaintiff is *not* required to show 'culpable participation'") (emphasis in original); *see also* Doc. No. 150 at 15]. Because Calton makes no arguments and presents no summary judgment evidence regarding whether it acted in good faith, it is not entitled to summary judgment on this point.

### C. Calton is not entitled to summary judgment on Plaintiffs' improper investment advice claim.

Calton next moves for summary judgment upon Plaintiffs' claim that Fredette, acting as an agent for Calton, and Calton itself provided Plaintiffs with improper investment advice. [Doc. No. 150 at 15–16]. Plaintiffs' claim is one for negligence under Oklahoma law, which requires (1) the existence of a duty, (2) a breach of that duty, and (3) injury to Plaintiffs proximately caused by Calton's breach. [*See* Doc. No. 155 at 31 (citing *Dirickson v. Mings*, 1996 OK 2, ¶ 7, 910 P.2d 1015, 1018)]. Plaintiffs allege Fredette, acting as an agent of Calton, acted negligently by providing investment recommendations unsuitable for the Downing Trusts. [*Id.*]. Plaintiffs also allege that Calton had a duty to review the Downing Trust accounts after it took ownership of them and determine whether the investments were suitable. [*Id.* at 31–32].

Calton's basis for requesting summary judgment on this claim is that the Court must examine the suitability at the time of the purchase, not retrospectively after

examining the performance of the investment. [Doc. No. 150 at 16]. According to Calton, Plaintiffs cannot maintain a suitability claim against it because "Calton was not involved in the investment recommendations in 2015." [*Id.*]. Plaintiffs' allegations, however, are not limited to purchases recommended by Fredette in 2015. Plaintiffs specifically claim that "numerous trades were completed after Fredette had transferred to Calton, wherein CMO's were again purchased for the Trusts." [Doc. No. 155 at ¶ 16 (citing Doc. No. 155-10, Calton Account Statements; Doc. No. 155-14, Commission Statements)]. Calton, therefore, has failed to demonstrate that no material issue of fact exists regarding whether unsuitable investment recommendations were made while the Downing Trusts were at Calton. Nor has Calton addressed Plaintiffs' allegations that Calton had a duty to review the Downing Trust investment accounts at the time of their transfer to Calton and that, therefore, Calton breached its duty to Plaintiffs. [*See* Doc. No. 155 at 31–32]. Accordingly, the Court determines Calton also has not demonstrated it is entitled to judgment as a matter of law.

Calton also again argues that neither Calton nor Fredette could be responsible for investment recommendations because Kevin Downing made investment decisions for the Downing Trusts. [Doc. No. 150 at 16]. As discussed above, a fact issue precluding summary judgment exists regarding this issue.

### D. Calton has not demonstrated it is entitled to summary judgment on Plaintiffs' breach of fiduciary duty claim.

Calton moves for summary judgment on Plaintiffs' fiduciary duty claim based upon two arguments. First, Calton states it does not owe Plaintiffs a fiduciary duty

because it was not a party to the agreement for the investment of the Downing Trusts, which was between IMS Securities and Plaintiffs. [*Id.* at 17]. Second, Calton argues it is entitled to a statutory exemption for broker-dealer from liability as a fiduciary. [*Id.*]. The Court concludes that neither of these arguments is an appropriate basis for granting summary judgment to Calton on this claim.

First, Plaintiffs do not claim that an agreement is the basis for the imposition of a fiduciary duty upon Calton. Instead, Plaintiffs claim that Calton owed them a fiduciary duty because "Fredette, IMS and Calton held themselves out, repeatedly, as experts in the securities industry, and in the CMO based investments particularly." [Doc. No. 155 at 34]. Plaintiffs assert that Oklahoma law recognizes a fiduciary duty in situations in which the broker-dealer and customer-investor have a disparity in their expertise, encouraging the customer to rely upon the broker-dealer's superior knowledge. [*Id.* at 33–34]. When examining whether a "stockbroker" owes his or her client a fiduciary duty, the Oklahoma Supreme Court stated as follows:

> Fiduciary or confidential relationship has a broad meaning that includes legal, contractual, formal, and informal relations and exists when one person trusts and relies upon another. Such a relationship exists when one person acquires influence over another such that the influenced allows the influencer to substitute his or her will for the influenced's own. The confidence's source is of no consequence. In most instances, the question of a fiduciary relationship is for a trier of fact.

*Horton v. Hamilton*, 2015 OK 6, ¶ 21, 345 P.3d 357, 364 (citations omitted).

Accordingly, Oklahoma courts have found fiduciary relationships to exists where "there is weakness on one side and strength on the other resulting in dependence or trust justifiably reposed in the stronger." *Matter of Est. of Beal*, 1989 OK 23, ¶ 18, 769 P.2d

150, 155 (summarizing situations in which courts have found the existence of fiduciary relationships). Based upon these principles, Plaintiffs argue Calton and Fredette owed Plaintiffs a fiduciary duty due to Kevin Downing's lack of "knowledge or experience in securities investments generally, let alone with regard to the complex CMO's recommended" by Defendants. [Doc. No. 155 at 34]. Calton does not provide summary judgment evidence that refutes such a relationship existed and therefore has not met its burden of proof to show it is entitled to judgment as a matter of law.

Nor can Calton avail itself of the broker-dealer exception outlined in *Thomas v. Metropolitan Life Insurance Co.*, No. CIV-07-0121-F, 2009 WL 2778663, at *1 (W.D. Okla. Aug. 31, 2009), *aff'd*, 631 F.3d 1153 (10th Cir. 2011). In that case, the court examined whether the defendant life insurance company owed a fiduciary duty to the plaintiffs arising from the Investment Advisers Act of 1940 ("the IAA"). *Id.* at *2–3. The court had to examine whether the services provided by the defendant were exempt from the IAA's coverage under a statutory exemption to the IAA. The court did not consider generally whether an exception exists to fiduciary duties owed by broker-dealers to its customers. *See id.* at *9 ("The court concludes, however, that the relevant statutory language, specifically the broker-dealer exception, precludes the application of the IAA's fiduciary standard to the [plaintiffs'] dealings with [the broker-dealer]."). Consequently, Calton's reliance on the exception is misplaced as Plaintiffs have not asserted claims under the IAA. Summary judgment on this claim, therefore, is not proper.

**E. Calton has not demonstrated it is entitled to summary judgment on Plaintiffs' fraud claims.**

Next Calton moves for summary judgment upon Plaintiffs' common law fraud claim. [Doc. No. 150 at 18–19]. Calton's sole argument is that Calton was not involved in the "initial dealings between Plaintiff[s] and IMS to create the Downing Trust and the associated investment contract." [*Id.* at 19]. Calton, therefore, states Plaintiffs have "no basis to imply that Calton misrepresented material facts to the Plaintiff[s], leading them to enter into a transaction to which Calton was not a party." [*Id.*].

However, the initial investment contract is not the basis for Plaintiffs' fraud claim against Calton. Instead, Plaintiffs assert Calton, through Fredette, made material misrepresentations that investments Fredette purchased for the Downing Trusts were suitable for their investment goals. [Doc. No. 155 at 36]. As outlined above, Plaintiffs present evidence that Fredette continued to recommend purchasing mortgage-backed securities for the Downing Trusts while he worked for Calton. [*See id.* ¶ 16]. Because Calton has not stated any argument that this is an improper basis for Plaintiffs' fraud claim, the Court determines Calton has not met its burden of showing it is entitled to judgment as a matter of law regarding this claim.

**F. Calton is not entitled to summary judgment on its successor liability affirmative defense.**

Lastly, Calton argues the Court should grant summary judgment on all Plaintiffs' claims based upon its affirmative defense that Calton does not have successor liability for IMS Securities' liabilities. [Doc. No. 150 at 19–22].

"As a general rule, when one company sells or otherwise transfers all its assets to another company, the successor is not liable for the debts and liabilities of the seller." *Crutchfield v. Marine Power Engine Co.*, 2009 OK 27, ¶ 12, 209 P.3d 295, 300. Courts find exceptions to this rule in the following four circumstances:

> (1) an agreement exists to assume such debts or liabilities;
>
> (2) a consolidation or merger of the corporations occurred;
>
> (3) the transaction was fraudulent in fact; or
>
> (4) the purchasing corporation is a mere continuation of the selling company.

*Id.* Plaintiffs assert that Calton is a mere continuation of IMS Securities and that the APA was fraudulent. [Doc. No. 155 at 38–46]. When considering whether one company is a mere continuation of another, Oklahoma courts consider whether there is a common identity of directors, officers, and stockholders before and after the sale; whether good consideration for the sale was present; and whether the seller corporation continues to exist in fact. *Crutchfield*, 2009 OK 27, ¶ 17, 209 P.3d at 301.

The parties' arguments regarding whether Calton is a mere continuation of IMS Securities demonstrate why this issue is inappropriate for determination upon summary judgment. Calton does not assert many arguments regarding whether Calton is a mere continuation of IMS Securities and seems to argue that the lack of common identity of directors, officers, and shareholders is outcome-determinative on this issue. [*See* Doc. No. 150 at 22 ("'In many states that employ the mere continuation exception, the common identity of directors, officers, and shareholders is the most important factor.'")

(quoting *Crutchfield*, 2009 OK 27, ¶ 17 n.16, 209 P.3d at 301 n.16)]. Even regarding the common identity of directors, officers, and shareholders, the parties place different emphasis on the same facts. Calton states that at the time IMS Securities ceased operations, it had only three shareholders, officers, and directors. [*Id.* at 10]. Two of those individuals transferred to Calton as registered representatives, which Calton says means they do not hold a similar position at Calton as they held at IMS Securities. [*Id.* at 10–11]. The third individual, who was a ninety-percent owner of IMS Securities, retired from the industry. [*Id.* at 10]. Plaintiffs, however, present summary judgment evidence that the officers retained the same or similar roles that they had at IMS Securities. [*See* Doc. No. 155 at 39–40; *see also* Doc. No. 155-11, Fredrick Jackson Dep. at 15:7–16:16].

Additionally, Plaintiffs submitted substantial summary judgment evidence that IMS Securities continued its business operations as Calton, including a lack of adequate consideration for Calton's acquisition of IMS Securities [Doc. No. 155 ¶¶ 23–25], evidence that day-to-day operations did not change after Calton's acquisition [*id.* ¶¶ 27–29], and substantial overlap in employees and customers between the two companies [*id.* ¶¶ 30–31]. Calton submitted evidence that contradicts the overlap between employees and customers but otherwise does not dispute Plaintiffs' summary judgment evidence regarding the continuation of IMS Securities under a new name or the lack of meaningful consideration for Calton's acquisition of IMS Securities. Although Calton states that "[i]n many states that employ the mere continuation exception, the common identity of directors, officers, and shareholders is the most important factor[,]" the very case cited by Calton demonstrates that is not the approach under Oklahoma law. *See Crutchfield*, 2009

OK 27, ¶¶ 17–22, 209 P.3d at 301–03 (weighing all three factors to determine if the trial court correctly applied the mere continuation exception to successor liability). The Court cannot conclude Calton is entitled to judgment as a matter of law regarding successor liability without consideration of each of the three factors outlined above. Therefore, the Court concludes that a genuine issue of material fact exists regarding whether Calton is a mere continuation of IMS Securities and that Calton has not demonstrated it is entitled to judgment as a matter of law regarding its successor liability affirmative defense.

Because Calton has not demonstrated it is entitled to judgment as a matter of law on this point, the Court does not need to reach Plaintiffs' claim that Calton's acquisition of IMS Securities was a fraudulent transfer. But the Court notes that Calton also has not demonstrated it is entitled to judgment as a matter of law on this point because Calton has not made any arguments to the Court disputing whether the transfer was fraudulent.

## V. CONCLUSION

For the reasons outlined above, the Court determines that Calton has not met its burden of demonstrating it is entitled to summary judgment on any of Plaintiffs' claims or upon its affirmative defense of successor liability. Therefore, the Court DENIES Calton's Motion for Summary Judgment.

IT IS SO ORDERED this 9th day of September 2025.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE